Okay, may it please the Court, Ray Halperin on behalf of the petitioner Francisco-Renteria, and I would like to reserve two minutes at the end for rebuttal. Basically what we have, Your Honors, in this case is a lawful permanent resident of the United States who's been a permanent resident for over 20 years. He has no criminal convictions whatsoever. He was apprehended at the border and was subsequently placed in removal proceedings. He had a total of three years in prison, and he is now the immigration judge. At the first hearing, his prior attorney denied the charges of removability when the government alleged smuggling charges. In the second hearing, the government had filed at the window a few weeks prior documents, the I-213, to establish removability based on the smuggling charge. At the immigration court hearing, the judge did not ask the petitioner's counsel if he denied the charges of removability. Basically what the judge, the attorney was trying to argue that he didn't have enough time, he was trying to get evidence regarding the smuggling charges, and the judge basically stated to him, you don't need time. Basically, I'm finding that what the government is stating in the I-213 is that you attempted to bring children into the United States, and because of that, I'm finding you removable. Mr. Halperin, I remember the record slightly differently. Isn't what happened that the defense, pardon me, the immigration attorney admitted the smuggling quote, with a proviso, unquote, that there should be mitigating circumstances because these children might indeed be related by blood to the alien? Your Honor, my reading of it, and I quote what he did state, he stated that under these circumstances, if we can bring, you know, documents to prove, it's not clear he may have thought, and I did speak with the petitioner, he thought that these Well, that's not what he said in his I-213. Your Honor, he did state the person is attempting to get the birth certificates of the two minors. He did tell that to the court. That's on page 97. That's quite different from saying he thought that they were American citizens. Well, if they were – if they had some blood relationship, he could have thought that they were U.S. citizens. Not unless he didn't know the law well. Well, under the automatic, the CCA, Child Citizenship Act, they could automatically be citizens even though they were born in Mexico, Your Honor. So, it's unclear. Who are the attorneys? One attorney was Mr. Brown, who was practicing mainly criminal law. The point being, though, is he did state, I need time. The judge said, well, do you have those documents today? It's in the transcript. And he said, no, it's very complicated. The judge said, well, I'm going to find you removable anyway. Now, what is important is that the judge states that the record shows, and this he's saying on page 99, he says the record shows that your wife presented the birth certificates, where nowhere in the record does it show that your wife presented. And because you knew about that, I'm finding that you were – you were a smuggler. Now, subsequent to that, there were three cases that this Court found in Altamirano v. Gonzalez, in which also they knew of the smuggling activity, but in any event were found not convicted of smuggling. Was Ms. Altamirano driving her own vehicle at the time that she passed the border with the individual? Your Honor, no, but she did acquiesce. And then Aguilar, she did acquiesce to use her children's birth certificates, Your Honor. Wait a second. Did the IJA make a finding that he was the driver? Did the IJA not find any evidence? He did not make a finding that he was the driver. He just stated – Did he make any findings at all? No. He stated in the transcript on page 99 that the I-213 shows that your wife presented the two documents, and you knew of the activity. Is there any problem with the Exhibit 2, which is the I-213, which reads, Avina was the driver of a gray 2002 GM Sierra pickup truck? That's in evidence, isn't it? That is in evidence, but that's not what the – the judge didn't state that that's what he was finding, because the actual attorney stated, I don't even think he was the driver. So you think as a matter of law, if he doesn't make a finding that he's the driver, he doesn't make a finding that there's an affirmative act? Your Honor, I am of the belief that even though he was a driver, that does not mean – that means that he – he did not – he went to the border. There weren't any hidden compartments like in Altamirano. Is it your position that he must make a finding, a fact, that he was a driver in order to be a record that there was an affirmative act under Altamirano? No, Your Honor. I believe – no, and I believe that even if the IJA found that he was the driver, even if – and which he didn't, but even if he did find that he was the driver, I find that that does not constitute smuggling, Your Honor. He acquiesced, as the record shows. He did – he was in Mexico. He was driving his car back from doing work. He came back in. He saw two kids in the vehicle. Do you – are you taking the position that the driver of an automobile under Altamirano does not do an affirmative act by driving the car through the border as a matter of law? Yes, Your Honor, because he was – Your Honor, he didn't do – he was driving back to the border. Your Honor, he was driving back from a day's work. He – basically, his act of driving the car didn't make the smuggling into what it did because the other – Smuggling wouldn't have occurred without him driving the car. Well, Your Honor, the smuggling – On what four bases do you think that that – you would argue that driving the car was not a proximate cause of going across the border? Your Honor, he acquiesced in having these children in his car. He was driving back anyway. He didn't do any affirmative act. He was driving himself back anyway. The children were put in the car. That's – you know, and there's a Seventh Circuit case, and I know we're not going in the Seventh Circuit, but there was a Seventh Circuit case law in Tapuco v. Gonzalez, and this Court has never ruled on that issue. But there is where he was the driver as well. And then, Your Honor, I also – it's very, very important to note that even if we find that he was a smuggler, that everything he did, he was still clearly eligible for cancellation of removal, the Board of Immigration Appeals stated that he was statutorily ineligible, but there's no basis in law for him not being eligible for that. He had the only – Is he subject to discretionary review? Discretionary review. Well, and the I.J. said, I know you haven't applied for cancellation of removal, but even if you were to apply, I would find against you as a matter of discretion because you are an alien smuggler. What's wrong with that? Your Honor, what's wrong with that is due process. This Court has consistently held that when an I.J. already prejudges a case, that is a clear violation of due process. The notice to the NOA alleged due process violation. An immigration judge can't just say, I'm prejudging. Cancellation requires a balancing. It requires a balancing of his 30 years as a permanent resident, his equities of the United States. He didn't even ask, are you married, do you have children, maybe they have – it's a balancing of the good and the bad, Your Honor. You can't just say, okay, I'm finding that smuggling denied. What about the case, Your Honor? What about Topuco? You said that Topuco holds your way? Topuco holds – he was the driver. He was the driver of the car. He was the driver until what point? He drove – he drove the car. No, no, no, no, no. Topuco stopped at the border. He stopped at the border, too? At the Canadian border. And he was not the driver of the car across the border. Your Honor – Read Altamirano at page 9 of 13, 427 Fed 3rd 586. Your Honor, Petitioner in this case also just stopped at the border. He went to the booth and handed his green card to – he was driving the car. His wife handed a green card. He drove into the United States. He did not stop at the border. He stopped at the border. Topuco is somewhat factually different, right? Well, no, Your Honor. I believe he – according to what it states, he was stopped at the border at initial and they suspected something and then they brought him over to secondary. So he did stop at the border and gave the documents. I believe it's the same. But going back to eligibility for cancellation, Your Honor, in Aguilar-Gonzalez v. Mukasey, there was a case there where the father masterminded the plan, told the daughter, give me the birth certificates. He got paid for it, Aguilar, and he was granted cancellation removal. In this case, Your Honor, we don't have all of those negatives. And there's a lot of positives. And an immigration judge can't just pretermit and decide that, okay, this is what I'm Let me ask – Were those documents ever introduced in evidence? They weren't because the judge says – the judge said, I'm not even going to accept them. He said, even if you had filed, but I'm not even going to accept it because I'm going to already decide that I'm not going to grant it. You mean the documents the government – The waiver application. What? The waiver application. Normally what happens is when the judge – when there's the charges of removability – Well, the government brought some documents, right? The government gave documents at the window, not at the court hearing. They were never really admitted even into the record. And they were never admitted into the record? Correct. Well, that's all I'm asking you. Right. Okay. Right. So they were never admitted, and he never got a contested removal hearing where he could deny even the charges. And good moral character is not an issue here. Good moral character becomes an issue if he's found removable, which he was. Then when he submits his application, then he gets to talk about – good moral character is not an issue. It's a balancing as can be issue. Wait. Did he have it? So those documents that support – that say he was the driver of the car, those were never admitted into the hearing? Right. Never formally admitted. And then he never had an opportunity to apply for cancellation of removal? Correct. Are you saying that the I-213s that say he was the driver were never admitted? Not according to the immigration judge. No, Your Honor. Take a look at AR-90, 96, and 129 cited in the red brief. I-213s were admitted as Exhibit 2 without any objection by the alien's attorney. What is the brief Cite 2 in the record? It cites this record as Administrative Record 90, 96, and 129 regarding admission to Exhibit 2 without any objection from the petitioner. It's not in this transcript. No, Your Honor. Basically, what happens is in an immigration court hearing, when there are documents, the judge says, okay, I've received these documents. Before I admit them into the record, I'd like to know, do you object to their admits? This did not take place, Your Honor. It did not. There's nowhere in the record does the immigration judge say, okay, here are the documents that I received. I'm going to – what is any objections? These are the documents. This is what it says. And he didn't even talk about the driver, Your Honor. He just said because you knew that the children – because on the I-213 it says that you knew, then because you knew, you are a smuggler, which case law says just because you have knowledge, you are – and he didn't give him an opportunity to argue about being the driver. The attorney even states, I don't even know if he was the driver. The attorney states. Now, do you – Why didn't he put on some evidence that he wasn't the driver? Because he said to him, do you have the documents today? And he said, I don't, Your Honor. It's complicated. He said, well, I'm not going to give you that time. And this was just the one basic hearing. It didn't say – You mean he couldn't put his man on the stand and ask him, were you the driver? The judge did not give him that opportunity. Did he make an offer of proof that that's what he was going to do? He said, Your Honor, I don't – the judge said, do you have those documents today? He said, I don't have it today. It's very complicated. What documents are necessary to put Mr. Avina on the stand, put him under oath, and say, were you the driver? Your Honor, I don't – Explain that to me, would you? Yeah. No. That is not complicated to do that. But when the judge doesn't give you an opportunity to do anything – Was that offer of proof made? No. Because he said, I need time. And he said, I'm not giving it to you. What time do you need to put your client on the stand? Well, he said, I'm not even letting you talk. He's basically, basically saying – Well, that's – so that's your due process. He wasn't given a hearing. Right. He wasn't allowed to talk. Thank you. So I don't – so if we were to remand this case, what evidence – what would you be putting on in front of the IJ that you didn't have an opportunity to put on? What I would do is I would object to the I-213. I would ask to cross-examine the officer because he did state that he was coerced and he did not know that the children were not legal, were not – that's what the petitioner says. So I would cross-examine because there – it appears that there was a lot of coercion involved. And when you look at the I-213, it's clear that they may have made up a lot of that because they kept on repeating the fact that he didn't know, you know, that it – that he knew that it was the children. And they said it about three times. So you would challenge as – I would challenge that. And then if the judge finds – They say are lacking foundation or just incorrect. Right. And then once – if the judge finds no, I think he is a smuggler. I mean, I do these cases almost on a daily basis, these permanent resident cases. I don't think we would get denied cancellation of removal on this case. I mean, it's not good moral character. It's a balancing of the good and the bad. The only bad that he has is this one bad. When you look at the one bad compared to all of the good things, I mean, it's not like he's just came to this country yesterday. He's been here for years. He has acquired equities. He has, you know, employment. Has he paid taxes? Paid taxes, employment, family here. You know, he's been a good model person. You do these hearings every day, you said? In my – my office is in Lancaster, which there's an immigration detention center in Lancaster, which deals with permanent residents who've been convicted of crimes, drug offenses, smuggling offenses, you name it. Do you – is this hearing unusual in your view? This is very unusual because we didn't have a contested removal hearing. You didn't have, okay, what's your forms of relief? None of this was asked by the judge. And normally, the judge cannot – I've never seen a case where the judge pressured somebody and prejudged a waiver application when they are readily granted for permanent residents who've been convicted. I mean, it's a one chance, and the judges usually give the one chance. Okay, you did mess up, we'll give you this one chance of a waiver. And cancellation removal, you only get it once. So if you have then another crime after you've gotten it granted, there's no relief available. So they are ready to give it the one time. But here, he didn't even give him an opportunity to submit the application. He didn't give him an opportunity to contest anything. He just basically said, it is what it is, goodbye. What instructions did they – did the judge fail to give certain instructions on the law to your client? Well, this court has held that, you know, a judge is required, you know, if there's relief available, a judge is required to notify the applicant of forms of relief. I mean, and technically, he was represented by counsel. But here in this case, not only did he not inform him and say, okay, you're eligible to apply. Let's have a hearing. You know, and he could have – if he denied it after the hearing, then fine. Then he denied it on discretion. We can understand that. Is that requirement to give instructions regarding relief available as applicable when a man is represented by counsel? He is chosen as when he's not represented? Exactly. And I agree. It is? No. And I – no. And I'm not saying that. But what I'm saying is it's not – it's not right if we come – for example – Do we have a case on that? Do we have a case on that that says that the judge doesn't have to give this information and instruct the defendant on what his – what the procedures are and what he's entitled to? We have a case. We have a case. But in that case – and I don't know if the person there in that case was represented or not represented. But we do not have a decision by this Court that says that a judge can prejudge a person's eligibility for relief and not entitle him to a hearing. This Court has never ruled on that. That – because if that's what this Court makes a ruling on, then that'll make immigration judges – just by what one thing – make them prejudge a whole case. I mean, it would knock out the court calendars in Los Angeles because everybody is entitled to a court hearing where they can present their claim, where they can present their equities. And again, cancellation for permanent residence is different than cancellation for non-permanent residence, which does require good moral character. The judge in his oral agreement – in his oral findings said the respondent had not applied for any form of relief – in other words, cancellation of removal. But I found that even though no relief had been requested up to the point of hearing, that if he did apply for cancellation of removal for a lawful permanent residence, that form of relief would be denied because of the smuggling charge. So I found that he was removable as charged. Again, Your Honor, he never gave him the opportunity. At the transcript, you will… He had an attorney, and the attorney didn't move for cancellation of removal, didn't request that as part of his relief. No, Your Honor, because that's not how the immigration… Are you claiming that's ineffective assistance of counsel? No, because basically what happened was he didn't set it over for – he said, okay, now I'm finding you removable. What forms of relief are you seeking? That's how it goes. It doesn't go, okay, I'm finding you removable, and even if you apply, I'm not going to grant it. That's what happened. Then it was sent back. So this wasn't an opportunity. He didn't have an opportunity to say, okay, he said – and he actually asked for time. He said, it's a complicated case. I'm trying to get my documents for the removability stage. And he said, nope. He said, I'm already deciding. You knew. It's a done deal. And then the board came back and said, statutorily ineligible for cancellation. They must have been thinking about non-permanent residence where there's a good… Well, we know that's wrong. Right, right. Exactly. And my point, though, is – and I know it may be far-fetched, but I – you know, yes, he was a driver, but he – he was going back anyway. He didn't – his – his actually taking the kids and being the driver did not make the smuggling scheme any more than what it would have been. And he – and it's unclear whether he even knew whether they were illegal or not illegal. All right. You've gone way over your head. All right. Thank you very much. Good morning, Your Honors. May it please the Court. John Blakely on behalf of the Respondent and Attorney General of the United States. Your Honors, I think we're making this case much more complicated, I think, than it needs to be. The single most important fact here is on page 96 of the record, and that's where Aliens Counsel admits the factual allegations that he encouraged, aided, vetted, or assisted the smuggling of aliens in his country. That was never withdrawn. Wait a second. Which one was that? Wasn't that the one that he said with the proviso and that he needed to… With the proviso. …he wanted to… With the proviso. So he did not admit it. You don't admit something with a proviso. You either admit it or you deny it. It was not… The government has a burden of showing that removability by clear and unequivocal evidence. Do you agree with that? But… But admitting with the proviso… You agree with that standard, right? It's the government's burden. It's clear and convincing. Yes, Your Honor. Clear and unequivocal is the case law, right? Yes, Your Honor. And he admitted it with a proviso and was trying to develop the facts to surround that proviso. How is that unequivocal? Well, he identified the proviso and the proviso was that there might be a relationship that would show that there was a link that would mitigate the circumstances. That was the purpose of the proviso, just to mitigate it and perhaps seek a waiver there. And then there was a discussion on that following… You and I are reading the same transcript. Nowhere is the purpose of the proviso in the transcript. I mean, that's your interpretation of the purpose of the proviso. Well, on page 96 and 97, they have the discussion of, you know, whether or not a waiver would be available. And so that's why I say that's the purpose of the proviso. A waiver… I don't understand what you mean by that. Let me make this statement if I can. It appears that my client is related by blood to, actually by marriage and blood, to the two minors that were brought in. And then that conversation continues into the next page. And then there's discussion, well, even if they were related by marriage or blood in some way, unless it's a spouse or the son or daughter, that there's no waiver available for this. And so your proviso is irrelevant, basically, is what's being said at that point. It's as relevant as whether he said, the proviso is I like chocolate milk. You're right, Your Honor. And so what we have… Relevant as what? It's completely irrelevant, Your Honor, because it doesn't make a waiver available. Well, who was the last… You gave an answer. What was the question? It's as relevant as whether he likes chocolate milk. Oh, okay. So what we have here is there's a waiver available for a spouse or son or daughter. And that's not the situation we have here. That allegation has never been made that that's available. And so at that point, he says, well, it looks like you're removable with no relief. And then the immigration judge asks, and this is very important as well, anything else, counsel? And he looks both to petitioner's counsel and government counsel and both respond, no, there is nothing else. If there's an opportunity for relief, if the alien's attorney had intended to file relief or thought that they could in some conceivable circumstances apply for relief, that's the point at which they could have done that. Well, here's the part that, I mean, he did try. It seems like the judge was really quick to jump on that there's no avenue of relief. And the attorney, Mr. Brown, did try to say there is a minor issue here. There were several people involved. What he's getting at is that he didn't believe he was the driver. There may be an issue of whether he's aware of exactly what was going on. And the judge says, all right, well, you can raise that issue on appeal. And, Your Honor, I think it's important to look closely at the record and to see the exact sequence of events for what exactly the immigration judge has said. And he says, all right, sir, I'm going to find this. This is my finding. I'm the judge. I find this. And even says, this is the oral decision of the immigration judge. So the immigration judge has asked. They didn't have a hearing. There were no witnesses, no cross-examination. And they asked for a continuance. So he could get better prepared. That was just denied offhand. But, Your Honor. Are you telling me this man had no remedy at all? No remedy at all? I'm saying that. I'm asking you that. He had no remedy at all? Remedy to what, Your Honor? I want to make sure I understand your question. Cancellation of removal. That was an available remedy to him, right? It was an available remedy. Yes, Your Honor. And he chose not to apply for it. He was asked if he wanted to. Anything else? I mean, granted, those aren't the clearest words around. He didn't. What do you mean he chose not to apply for it? Where does he say, I choose not to apply for that relief? He didn't. Your Honor, on page 97 of the record, the immigration judge says. So at that point, I think that he's removable with no relief. Anything else? Where is that? What line? On line 14 through 17, Your Honor. And so he's asking, is there anything else before I reach my decision? Your Honor, the only waiver that's authorized is for spouses, son or daughter. That's 12 and 13, yes. That's Mr. Gassier's, Miss Gassier to the judge. That's government counsel to the judge, yes.  Then the answer, that's the judge. So at this point, I think he's removable with no relief. Judge to counsel. Anything else? No, Your Honor. No, Your Honor. Then they go on and they raise it. Then they go on. All right. And I think it's important to note, as they're going on, it's the immigration judge saying. So you have to find that you're removable. Removable with no relief. And so he makes his decision. After he makes his official ruling as the judge of that court. But how can he make a decision if he hasn't had a hearing? But Your Honor, because he's not required. This is the hearing. This lawyer got up there and conceded everything. When he admitted the factual allegations, then there's nothing else as far as fact that needs to be discussed. But he didn't admit one of them. So he had a poor lawyer then. But Your Honor, I'm not going to characterize the lawyer's performance as poor or adequate or inadequate. To the extent that the alien feels that counsel's performance was inadequate, he has a remedy for that. And in fact, he made at different points allegations of ineffective assistance. But the immigration judges know that the people that appear before him representing others, that there's a high percentage of incompetence in that group. They know that. Yes, Your Honor. And he's and the immigration. And the Justice Department knows that as well. Right? Yes, Your Honor. OK. So let's think about those things, too. Yeah, I agree that we can think about all those things, Your Honor. But we also have to consider that this is an alien who's smuggled three different times. Does this young lady represent him at this IJ hearing? No, Your Honor. She did not. And I imagine this record would be more detailed if she had. But that's not what we have. A different result, I presume. Who represented him at this hearing? I think the name is Brown, I think, Your Honor.  I don't have the answer to that, Your Honor. But so what we have here, and I wanted to clear up one other thing here as well, and that was that there was an allegation made that the I-213 and the investigative documents were not part of the record. They are discussed at several points in the record. And they are officially labeled as an exhibit in the courtroom. And probably most importantly here, there's never an allegation made to the agency that these weren't admitted. So the board didn't have the opportunity to correct anything that might have been wrong with the way that the immigration judge held these proceedings. And so, well, there were a couple things that were said in the notice of appeal. That they should have had the opportunity to cross-examine the deportation officer, and that it was inadmissible hearsay that they looked at the I-213. Those two things were identified in the I-213 and brought up to the agency. Nothing else about due process. You say brought up to the agency. To the board, Your Honor. The BIA. Yes. Who represented this gentleman before the BIA? That was an attorney. If I'm correct, it's another attorney from counsel's firm. No, it's not. No, it's not. It's an attorney who was subsequently indicted for visa fraud. You know that? No, I did not know that, Your Honor. They're both in the federal penitentiary, if you want to interview them. But in any event, Your Honor, there was the opportunity to raise ineffective assistance of counsel with respect to what was done before the board. And this person did raise it. But I have another question for you. Because I think that I.J. here actually may have violated the regulation under 124010C. Are you familiar with that regulation? I don't know if you're debating it. It's what's supposed to happen at the hearing. And it says that if the respondent admits the factual allegations and admits his or her removability, which I don't think they ever. I don't think even counsel under Shin ever conceded removability. But if that happens under the charge and the immigration judge is satisfied that no issues of law or fact remain, the immigration judge may determine that removability as charged has been established. But here, the immigration judge acknowledges that there are issues that he's not letting him raise. So he can't possibly have been satisfied that no issues remain. That's after he's issued his decision. And the immigration judge had found that there's no material issues of fact when he reached his decision. I don't know how you can say that when the I.J. is ruling on that. He says, hey, I have. The lawyer says, there is an issue. And it concerns whether his conduct actually amounted to smuggling such that he keeps trying to raise this. And the I.J. says, all right, well, you can raise that issue on appeal. Which is, I mean, he has to say that he has to make some fine. He has to say, oh, no, I'm satisfied with it, you know, that that issue is irrelevant. He's saying he didn't even have knowledge. He's trying to contest the 213. That means there's issues of fact in law. Well, Your Honor, that's coming after the immigration judge has already made his decision. What difference does that make? I've sat as a district court judge. I make a ruling and someone says, but wait, Your Honor, you need to consider X, Y, or Z. I don't just say, no, take that up on appeal. I mean, I would consider that. It's part of the hearing. It's an issue that's before me. Your Honor, I would even agree that it's not the best way to do things, but it was made after the decision. And the alien had the opportunity to appeal this. And to the extent that he agreed that this was a problem, he had the opportunity to raise it to the agency and he never has. The attorney didn't raise it. The attorney didn't even file a brief because the attorney was indicted. So, yeah. And there was a motion to reopen file for ineffective assistance of counsel. And that motion also failed. And so if this was, in fact, defective performance of counsel before the immigration judge, and if, in fact, it was ineffective assistance of counsel by not filing the brief with the appeal to the board, then that could have been corrected with the motion to reopen for ineffective assistance of counsel. Okay? At that point, it wasn't. It wasn't adequately raised to the agency. Okay? They challenged. They said there was ineffective assistance below. That was raised to the board. And the board said, you have not complied with matter of Lizada, and therefore, you have not established it. And to the extent that at that point, the ineffective assistance of counsel was you hadn't, didn't apply for cancellation of removal. And that's where the board went into the argument on prejudice to cancellation of removal and made its error. You're going to pin the entire response to my concern about the regulatory violation by the I.J. at the hearing on that violation occurred after he had already ruled. That's your entire response to that? No, Your Honor. That's not my entire response. That's one of them. And my other is that that issue has never been raised to the agency. And so the board did not have an opportunity to correct that problem to the extent that it felt it was a problem. Well, the board actually didn't even understand what case it was having in front of it. The board made a lot of mistakes. There's only one that we acknowledge in the brief. I'm not sure which one is exactly you're referring to. When it referenced the cancellation of removal provision that applies to nonpermanent residents, it was looking only at prejudice in the context of ineffective assistance counsel. It was not looking at the direct appeal. And so to the extent that ineffective assistance of counsel is not the issue that's been briefed and that is presently before the court, that's an irrelevant error that the board made. I'll concede that that's error, but it's irrelevant. It has nothing to do with the decision before us. To the extent that this alien feels that he was wronged by the way the immigration judge conducted these proceedings, he's required to raise that to the board or it's not properly exhausted. It's not properly before this court. Who's going to raise it for him? He's supposed to know all these rules when he comes in there? Your Honor, he's represented by counsel and it's... With a lawyer that sort of kind of plays dead, I suppose, and had other things. And these two were just not on the same wavelength. Your Honor, to the extent that this alien has been poorly represented by private counsel, there are remedies available there. And that remedy is a motion to reopen to file for ineffective assistance of counsel. The one time that he attempted to file a motion to reopen for ineffective assistance of counsel before the agency... He wouldn't even be there if you had an immigration judge that had any ounce of And could see that this lawyer was really not up to it. And one of his jobs is to see that people get a fair hearing. Is that right? Yes, Your Honor, that is correct. Did he perform that duty? Do you think he did? Do you think the Attorney General would agree that he got a fair hearing? He would agree that it would be a fair hearing. Whether the immigration judge conduct this in the best manner, I would... I don't think so. Well, Your Honor, to the extent that the alien feels that his hearing was unfair, he has a remedy. And that's to raise it first with the agency. That has not been done yet in this case. One of his remedies is to find a competent attorney. And where's he going to find one? Well, he has a competent attorney now. The whole... Well, she's good. I like her. And Your Honor, and she's... You know why? She fights for her clients. You know, a lot of... I agree, Your Honor, and I commend her for that. But that doesn't change the... I'm going to take the money and run, you know. Let me ask you something. Do you think your client would be willing to do a joint motion to reopen in this case? Your Honor, this is the problem we have. Well, the easier answer to your question is I'd have to talk to them. Of course you have to, Bill. If I was going to... If you're asking for a guess, a prediction on what they say, I would say you have to keep in mind here that this was an alien who admitted to smuggling, and he admitted to twice before having been caught smuggling. So this is a three-time offender. Okay? He hasn't been criminally prosecuted. I can't say that's... He got arrested. He was arrested twice. Nothing happened after that. Your Honor, he wasn't charged in criminal court on any of the three occasions. But when you're talking about the discretionary comment that the immigration judge made here that I would deny you because of the smuggling, it's because the aliens repeated disregard for the laws of the United States, as indicated in the record, and he admitted to it. I know, but... The IJ disregarded the laws of the United States and disregarded the rules of his own agency. I don't know... Which requires a fair trial. I think it overstates it to say that he disregarded the laws. To say that he didn't provide some of the safeguards that he could have applied under the regulations, I would think that he could have done a better job. I would agree with you. But I don't think he disregarded the regulations. What I'm asking about, actually, is whether you think your client would be willing to do a joint motion to reopen so that somebody, the IJ or somebody, could actually consider the equities on cancellation. That really wasn't done in this case. And it seems that he does have 30 years in the United States, and he does have a lot of, I guess, wife and citizen children. There would be a lot of equities that he could put forward. I would agree there, Your Honor. And I'm happy to communicate with DHS and see if they'd be willing to join a motion to reopen. I would only say that I'm predicting that based on the repeated disregard to the laws of the United States, that they won't. But like I said, I'm happy to take that to them, and I will. Right. Any other questions, Your Honor? Then I would just ask this Court to focus first on the facts here that he's an admitted smuggler and ask this Court to deny the petition for review. Where does he say I'm an admitted smuggler? Where he admits to the factual allegations, and the specific allegation that he admitted to was that he encouraged, aided, or abetted, or assisted. That's the one we have a debate over, whether he admitted that. Well, but if you look at the language that provides on the argument that's made from there, it clearly establishes that he knew what he was doing. Does the judge say, do you admit to being a smuggler? He never used the words, I admit to being a smuggler. His counsel admitted to the factual allegation, where the factual allegation is whether he encouraged, aided, or abetted, or assisted the entry of an alien into the United States without permission. That's not the exact words at the end, but to that effect, Your Honor. Thank you, Your Honor. Thank you, counsel. It's a matter of stance, and we've all had twice as much as your allocated time, and we appreciate the arguments on this side. Now, who's the gentleman behind you? Is he with the Justice Department? Uh, Mr. Gluckstein. What?
judges: Pregerson, Wardlaw, Bea